# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ROSARIO A.,

                  Plaintiff,

      v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                Defendant.

Case No. 21 C 3348

Magistrate Judge Sunil R. Harjani

## MEMORANDUM OPINION AND ORDER

Plaintiff Rosario A.[1] brings this action for judicial review of the Social Security Administration's decision denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. For the following reasons, Plaintiff's request for reversal and remand [13] is denied, and Defendant's Motion for Summary Judgment [23] is granted.

## I. BACKGROUND

Rosario applied for DIB on July 11, 2018, alleging she became disabled beginning on April 16, 2018 due to Type 2 diabetes, high blood pressure, anemia, undifferentiated connective tissue disease, post-traumatic stress disorder ("PTSD"), anxiety, severe scoliosis, and hernias. Rosario was born on January 23, 1975, making her 43 years old at the time of her DIB application. Rosario graduated from high school and has past relevant work as a receptionist, teacher aide, and print shop clerk. More recently, in June 2019, Rosario stated that she worked as a nanny for a two- and four-year-old. In March 2020, Rosario stated that she worked as a part-time teacher and nanny.

---

[1] Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff by her first name and the first initial of her last name or alternatively, by first name.

Rosario's claims were initially denied on August 1, 2019, and upon reconsideration on December 9, 2019. (R. 16). Following Rosario's written request for a hearing, on November 19, 2020, Rosario testified by telephone in front of Administrative Law Judge ("ALJ") Earl Ashford. *Id*. At the hearing, the ALJ heard testimony from Rosario and a vocational expert ("VE"), Lanelle Hall. *Id*. Following the administrative hearing, ALJ Ashford issued a decision on December 8, 2020, finding that Rosario was not disabled. *Id*. at 16-30. The opinion followed the required five-step evaluation process. 20 C.F.R. § 404.1520.

At step one, the ALJ determined that Rosario had not engaged in substantial gainful activity since April 16, 2018, the alleged onset date. (R. 19). At step two, the ALJ found that Rosario had the following severe impairments: anxiety with panic disorder with agoraphobia; major depressive disorder depression with bipolar disorder; PTSD; status post hernias; undifferentiated connective tissue disease; right shoulder disorder; and degenerative disc disease, thoracic and lumbar with scoliosis. *Id*. At step three, the ALJ concluded that Rosario's impairments did not meet or medically equal a listed impairment. *Id*. at 20. In particular, the ALJ considered listings 1.02, 1.04, 5.02, 12.04, 12.06, and 12.15. *Id*. The ALJ concluded the "paragraph B" criteria had not been satisfied, but Rosario had limitations in all four broad areas of functioning. *Id*. at 20-21. The ALJ found a moderate limitation in understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace ("CPP"). *Id*. The ALJ found a mild limitation in adapting or managing oneself. *Id*. at 21.

At step four, the ALJ determined that Rosario had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR § 404.1567(b) with the following limitations:

> Postural limitation of occasional climbing of ladders, ropes, or scaffolds. Occasional climbing of ramps and stairs. Frequent stooping, kneeling, crouching and crawling. Frequent use of the bilateral lower extremities for operation of foot controls. Manipulative limitation of frequent use of the right upper extremity for

2

overhead reaching. Frequent use of the bilateral upper extremities for other reaching, handling, and fingering. Environmental limitation to avoid concentrated exposure to hazards, such as dangerous moving machinery and unprotected heights. Additional environmental limitation to avoid concentrated exposure to irritants such as fumes, odors, dust, gases, extreme cold, and humidity. Work limited to simple, routine, and repetitive tasks in a work environment free from fast paced production requirements, such as moving assembly lines and conveyor belts, involving only work related decisions, with few if any work place changes. No interaction with the general public. Occasional interaction with coworkers, and supervisors.

(R. 21). The ALJ determined that Rosario could not perform any of her past relevant work, but other jobs existed in significant numbers in the national economy that she could perform, including marker, routing clerk, and office helper. *Id*. at 28-29. As a result, the ALJ found Rosario not disabled. *Id*. at 29. On April 19, 2021, the Appeals Council denied Rosario's request for review, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-7; *Prater v. Saul*, 947 F.3d 479, 481 (7th Cir. 2020).

## II. **DISCUSSION**

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform his former occupation; and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience. 20 C.F.R. § 404.1520(a)(4); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. § 404.1520(a)(4). "An affirmative

answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (internal quotation marks omitted).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, --- U.S. ----, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (internal quotation marks omitted). Nevertheless, where the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940.

Rosario argues that the ALJ's decision should be reversed and remanded for three reasons. First, she contends the ALJ failed to account for her mental limitations in the RFC assessment. Second, Rosario argues the ALJ drew impermissible inferences to reject her subjective statements. Third, she claims the ALJ erred in assessing medical source statements of Dr. Paul Roach, M.D., the surgeon who had treated her abdominal issues, and consultative examiners Dr. Zaia Lachin, M.D., and Dr. Jauren Kelly, Psy.D. For the reasons discussed below, the Court finds the ALJ's decision supported by substantial evidence. *Biestek*, 139 S.Ct. at 1154.

### A. Mental RFC Assessment

Rosario disagrees with the ALJ's mental RFC assessment for three reasons. Doc. [13] at 8-12. First, she argues the ALJ erred because he provided an incomplete assessment of her mental

limitations at step three.  Second, she claims the ALJ relied "upon cherry-picked and anecdotal facts" to undermine her limitations in mental functioning.  Third, Rosario asserts the ALJ failed to account for her mental limitations in the ultimate RFC.[2]  The Court takes each argument in turn.

As background, the RFC is "the most physical and mental work the claimant can do on a sustained basis despite her limitations." *Madrell v. Kijakazi*, 25 F.4th 514, 516 (7th Cir. 2022).  In preparing an RFC, "the ALJ must consider in combination all limitations on a claimant's ability to work, including those that are not individually severe." *Krug v. Saul*, 846 F. App'x 403, 406 (7th Cir. 2021).  If a claimant "has a medically determinable mental impairment, then the ALJ must document that finding and rate the degree of functional limitation in four broad areas," known as the "B criteria." *Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008) (citing 20 C.F.R. § 404.1520a(c)(3)).  The ALJ will rate a claimant's degree of limitation according to the following scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4).  However, the limitations identified in the "paragraph B" criteria are not a mental RFC assessment. SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996).  Rather, the RFC evaluation at steps 4 and 5 "requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form]." *Id.*

First, Rosario views the ALJ's step three analysis through a narrow lens to assert that the ALJ failed to provide a complete assessment and fails to read the ALJ's opinion as a whole. *See Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019) ("The court applies a common-sense reading to the entirety of an ALJ's decision."); *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("it would be a needless formality to have the ALJ repeat substantially similar factual

---

[2] However, Rosario does not claim that listing level severity is equaled or met. Doc. [13] at 8.

analyses at both steps three and five.").   At step three, the ALJ concluded that Rosario had "paragraph B" limitations in all four broad areas of functioning. (R. 20-21).  Specifically, the ALJ found moderate limitations in understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace. *Id*.  The ALJ also found a mild limitation in adapting or managing oneself. *Id*. at 21.   Next, the ALJ acknowledged that the limitations identified in the "paragraph B" criteria did not constitute a mental RFC assessment, and that such an assessment "requires a more detailed assessment." *Id*.  The ALJ previewed that a subsequent RFC assessment would "reflect[ ] the degree of limitation ... found in the 'Paragraph B' mental function analysis." *Id*.

Contrary to Rosario's claim, the ALJ's analysis did not stop with "Paragraph B," and this is not a case where the ALJ "included a boilerplate assurance" without later analysis. Doc. [13] at 8.  In steps four and five, the ALJ continued his analysis with a lengthy discussion of Rosario's mental health as required by the regulations. SSR 96-8p, at *4; (R. 24-28); *Jeske v. Saul*, 955 F.3d 583, 590 (7th Cir. 2020) ("[t]he five-step evaluation process comprises sequential determinations that can involve overlapping reasoning. This is certainly true of step three and the RFC determination that takes place between steps three and four...").  In particular, the ALJ considered Rosario's medical records, including mental health progress and treatment notes with various diagnoses and medications, therapy notes that detailed her mental health and affect, and negative depression screens from March 2019 and June 2020. (R. 24-25) (citations omitted).  Additionally, the ALJ discussed opinion evidence from a function report completed by Rosario's husband, which discussed Rosario's panic attacks and ability to follow short instructions. *Id*. at 25-26 (citing R. 600-08).  The ALJ also considered an opinion questionnaire from Rosario's surgeon Dr. Roach,

the consultative internal medicine examination by Dr. Lachin, and the consultative psychological examination by Dr. Kelly. *Id*. at 26- 27 (citations omitted).

Subsequently, the ALJ crafted an RFC with five non-exertional mental health limitations: (1) work limited to simple, routine, and repetitive tasks; (2) a work environment free from fast paced production requirements, such as moving assembly lines and conveyor belts; (3) work-related decisions, with few if any workplace changes; (4) no interaction with the general public; and (5) occasional interaction with coworkers, and supervisors. (R. 21). Further, at Rosario's hearing, the ALJ's selected hypothetical to the VE was identical to the five non-exertional limitations in the RFC. *Id*. at 2240; *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) (citations omitted) (requiring the hypothetical posed to the VE to incorporate the claimant's limitations supported by the medical record). As such, reading the ALJ's opinion as a whole, Rosario's assertion that the ALJ provided an incomplete assessment of her mental limitations falls short.

Second, Rosario asserts that the ALJ "painted a misleading picture of Plaintiff's [CPP] deficits." Doc. [13] at 8-9. The Court finds no error because the ALJ built an accurate and logical bridge from the evidence in the record to his conclusions in the two mental functioning areas that Rosario asserts are at issue. As further discussed below, Rosario is essentially asking this Court to second-guess the ALJ's RFC and reweigh the evidence, which the Court cannot do.

In interacting with others, the ALJ noted that although Rosario described trouble getting along with others, she reported going away with friends over the Memorial holiday weekend. (R. 20). Rosario hypothesizes that "going away on an upcoming weekend is not probative as to how she actually functioned when the weekend arrived." Doc. [13] at 9. But Rosario's decision to go away with her friends is probative of her ability to interact with others. In response, Rosario does not claim she could not function over the holiday weekend with her friends. Instead, Rosario

7

explained to her therapist that she enjoyed herself on a weekend away. (R. 1017). Additionally, the ALJ considered that Rosario enjoyed spending time with friends. *Id*. at 25 (citing R. 1014-15). Again, Rosario does not cite evidence to support her claim that she could not "interact in the 'real world'—particularly in a work setting." Doc. [13] at 9. Moreover, the ALJ pointed out that Rosario was cooperative at her evaluations as further evidence of her ability to interact with others. (R. 20) (citing R. 1470). While Rosario disagrees with the ALJ's review of the record in concluding that she only had a moderate limitation in interacting with others, the Court does not see the "misleading picture" Rosario claims exists because the ALJ more than minimally articulated his analysis of the evidence.

Similarly, for CPP considerations, the ALJ did not misstate the record. The ALJ recognized that Rosario described trouble concentrating, and Dr. Roach opined that she might have concentration and attention affected by pain prior to her hernia repair. (R. 21) (citing R. 1787-88). But the ALJ also appropriately considered evidence where Rosario was reported to have normal attention, no significant deficits in concentration, and worked as a part-time teacher and nanny as evidence of her capacity to concentrate or work more generally after her alleged onset period. *Id*. (citing 1470). Thus, the ALJ considered and weighed the various reports in the record where Rosario had no attention abnormalities, but also evidence that noted Rosario's difficulties. Rosario, on the other hand, does not grapple with both sets of evidence, but rather ignores evidence that contradicts her position. In sum, the ALJ did what he was required to do, which is to the weigh the conflicting evidence in formulating the RFC.

Third, Rosario claims that the ALJ "bought into the misconception, rejected by the Seventh Circuit, that even moderate difficulties in [CPP] translate into an ability to perform unskilled, full-time work." Doc. [13] at 9-11 (citing *Martin v. Saul*, 950 F.3d 369, 373-74 (7th Cir. 2020). This

8

argument also fails.  As an initial matter, Rosario's reliance on *Martin* is misplaced.  In *Martin*, the Court found no error because "[t]he second ALJ did not take any of the shortcuts on Martin's CPP limitations that we have found problematic in other cases. To the contrary, the ALJ tailored Martin's RFC to her CPP limitations without assuming that restricting her to unskilled work would account for her mental health impairments." 950 F.3d at 374; *Chojnacki v. Saul*, 2020 WL 1888246, at *4 (W.D. Wis. Apr. 16, 2020) (noting that "the ALJ in Martin 'showed her work' and addressed all three components of CPP in the RFC assessment").

In crafting an RFC, there is no requirement that an ALJ must use any "magic words," and "reversal is not required so long as the assessment 'incorporate[s] all of the claimant's limitations supported by the medical record.'" *Treva L. v. Kijakazi*, 2022 WL 3700829, at *9 (N.D. Ill. Aug. 26, 2022) (citing *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019)).  Indeed, terms like simple and repetitive tasks may still be employed to account for CPP limitations in certain cases. For example, in *Jozefyk v. Berryhill*, the Seventh Circuit affirmed the ALJ's RFC restrictions of simple, repetitive tasks and limited interactions with others to account for the claimant's moderate CPP limitations. 923 F.3d 492, 498 (7th Cir. 2019).  The Seventh Circuit found that such language was sufficient because the record medical evidence showed mental limitations present only when the claimant was with other people or in a crowd, and because there was a lack of testimony and medical evidence supporting CPP limitations. *Id*.

In Rosario's case, the ALJ evaluated the evidence, including Rosario's testimony to the ALJ, the function report she completed in 2019, and various mental health medical records from 2018 to 2020 concerning her diagnoses and individual therapy notes. (R. 22, 24-25) (citations omitted).  For example, Rosario's therapy notes from August 2018 reported Rosario feeling "progress" in regard to her mental health. *Id*. at 25 (citing R. 1020).  Additionally, Rosario

described making simple, quick meals in her function report in 2019. *Id*. at 22 (citing R. 218). A medical record from March 2020 also indicated that Rosario had no decrease in concentrating ability. *Id*. at 25 (citing R. 1469). Thus, the record supported the ALJ's conclusion that Rosario had moderate limitations. *Id*. at 21.

In addition, the ALJ properly relied on the state agency consultants. (R. 62-63, 81-82); *see Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019) ("an ALJ may reasonably rely upon the opinion of a medical expert who translates [CPP] findings into an RFC determination."). The consultants reported that Rosario was not significantly limited in her ability to carry out very short and simple instructions, perform activities with an ordinary routine, and make simple work-related decisions. *Id*. They noted that Rosario was moderately limited in her ability to carry out detailed instructions and maintain attention and concentration for extended periods. *Id*. Ultimately, they concluded Rosario was "capable of performing 1-2 step tasks and can concentrate sufficiently to complete these kinds of tasks. The claimant could interact with others sufficiently in a work setting with reduced social demands but could not work with the general public on an ongoing, continuous basis. She could adapt to routine changes and pressures in the workplace." *Id*. The ALJ found the consultants' opinions somewhat persuasive, but to provide an adequate RFC, he adopted additional restrictions and limited Rosario to "simple, routine, and repetitive tasks in a work environment free from fast paced production requirements, such as moving assembly lines and conveyor belts, involving only work-related decisions, with few if any workplace changes. No interaction with the general public. Occasional interaction with coworkers, and supervisors." *Id*. at 27.

Further, the ALJ adequately tailored Rosario's RFC to accommodate her CPP limitations. RFC limitations must be articulated in a manner that builds a logical bridge from the evidence to the conclusion, *see Fisher v. Berryhill*, 760 Fed. Appx. 471, 476 (7th Cir. 2019), and "account[s]

for the totality of a claimant's limitations in determining the proper RFC," *Martin*, 950 F.3d at 374 (internal quotation marks and citations omitted). Instead of merely limiting Rosario to "simple, routine tasks," the ALJ specified that her occupation should exclude fast-paced produced requirements and that her work environment should remain constant, with few changes. (R. 21). Among other things, this limitation was based on evidence from the state agency consultants' findings that Rosario could complete simple tasks in an environment with an ordinary routine. *Id.* at 62-63, 81-82. The ALJ also considered Rosario's reports that she could complete tasks such as preparing simple meals and that she would become "very upset" with changes in routine. *Id.* at 22, 206, 215. The law required the ALJ to incorporate any mental limitations supported by Rosario's medical record into the RFC, *Yurt*, 758 F.3d at 857, and the ALJ did so by discussing Rosario's mental health treatment history and imposing several restrictions aimed at Rosario's mental impairments beyond those crafted by the state agency consultants. Thus, the ALJ avoided the pitfall of a barebones mental RFC construction.

Moreover, Rosario does not explain what further limitations would be appropriate. In *Jozefyk,* the Seventh Circuit held that any mental RFC assessment flaw by the ALJ was harmless, in part, because it was "unclear what kinds of work restrictions might address [the claimant's] limitations in concentration, persistence, or pace," because the claimant had not hypothesized any. 923 F.3d at 498; *Gedatus v. Saul*, 994 F.3d 893, 904 (7th Cir. 2021) ("A fundamental problem is [that claimant] offered no opinion from any doctor to set sitting limits, or any other limits, greater than those the ALJ set."). Likewise, Rosario has not explained what additional limitations should have been imposed. Instead, she disagrees with the ALJ's RFC by claiming "someone with problems concentrating may not be able to complete a task consistently over the course of a workday, no matter how simple it may be," and "any 'good' days were short-lived." Doc. [13] at

10-11. Yet the medical record does not support the supposition that Rosario cannot complete tasks in a workday regardless of their level of simplicity. Rather, the record reveals that she worked as a part-time nanny and teacher after her alleged onset period, admitted to having good days and well-controlled anxiety, and included daily activities such as cooking, cleaning, and attending appointments. (R. 22-24, 55, 63, 82, 202, 234, 536, 544, 1019, 1274). Rosario's conclusory attacks on the ALJ's mental RFC fall flat without proposing additional restrictions or illustrating that the medical evidence warrants additional restrictions.

Finally, mixed in her mental RFC argument, Rosario buries in a claim that the ALJ erred by not accounting for the effects of her physical impairments, in combination, in assessing the RFC. Doc. [13] at 9. In the subsequent section regarding the ALJ's subjective statement analysis, Rosario also lumps in an unrelated argument that evidence of her physical impairments was not accounted for in the RFC. *Id*. at 13-14. Rosario's arguments are perfunctory and undeveloped and therefore waived. *Krell v. Saul*, 931 F.3d 582, 586 n.1 (7th Cir. 2019) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."). Even if she had properly raised it, Rosario's theory fails because the ALJ relied on substantial evidence, including her testimony, medical records from 2018 to 2020, and medical opinion evidence. *Id*. at 22-26. For example, the ALJ addressed the right shoulder imaging from July 2019, which Rosario pointed to in her argument, to conclude that Rosario's right shoulder disorder was severe. *Id*. at 19, 24. Because Rosario did not properly include an argument claiming the ALJ's physical RFC is in error, Rosario's argument is waived.

**B. Subjective Statement Assessment**

Rosario next argues that the ALJ erroneously rejected her statements because she could engage in some activities of daily living ("ADLs"). Doc. [13] at 12-14. Rosario's argument is

unavailing. As a general matter, the Seventh Circuit cautions against an ALJ equating the claimant's ability to perform ADLs with their ability to work full time. *See Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). In the present case, there is no evidence that the ALJ overstated Rosario's ability to perform ADLs, nor did the ALJ infer from those activities an ability to perform full-time work. *See Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (noting that the ALJ discussed the claimant's performance of ADLs but did not equate it with an ability to work).

"[A]n ALJ is not forbidden from considering statements about a claimant's daily life. In fact, agency regulations instruct that, in assessing a claimant's symptoms, the evidence considered includes descriptions of [ADLs]." *Jeske*, 955 F.3d at 592 (citing 20 C.F.R. § 404.1529(a), (c)(3)); *Bruno v. Saul*, 817 F. App'x 238, 242–43 (7th Cir. 2020) (affirming where ALJ considered part-time employment in credibility determination); *Prill v. Kijakazi*, 23 F.4th 738, 748 (7th Cir. 2022) ("the ALJ appropriately considered that—despite [the claimant's] claimed limitations related to standing, sitting, kneeling, squatting, and crouching—she cooked, baked, vacuumed, did laundry, loaded the dishwasher, drove, played cards, gardened, and cared for minor children."). Further, "[a]s long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022); *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support.").

The ALJ concluded that Rosario had the RFC to perform a range of light work, finding that her statements about disabling pain and symptoms were not credible. (R. 21). The ALJ explained that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" because Rosario displayed a normal gait and range of motion, exhibited normal affect and mood,

appeared in no acute distress, and engaged independently in several ADLs throughout the relevant period. *Id*. at 23-25. In addition, the ALJ identified specific activities that suggested Rosario was less limited than she alleged. *Id*. at 27. For example, the ALJ noted that Rosario testified that she could stand for no more than five minutes, could not lift more than five pounds, and could only walk for five to ten minutes before having to hold on to something. *Id*. at 22. However, the ALJ relied on medical records from 2020 and Rosario's function report, which reflected that Rosario regularly rode her bicycle or walked for exercise. *Id*. at 27 (citing R. 205, 1461, 1471, 1478, 1491, 1934). The ALJ also pointed out that Rosario testified that her anxiety led her to isolate and avoid others. *Id*. at 22. But the ALJ stated that Rosario was able to work as a preschool teacher and nanny during the relevant period. *Id*. at 27 (citing R. 1389, 1401, 1470).

In sum, the ALJ adequately explained why Rosario's daily activities undermined her subjective complaints and were inconsistent with other evidence in the record. In partially discounting Rosario's subjective statements, the ALJ found them inconsistent with objective medical evidence showing Rosario could stand and walk for longer than she testified and interact with others even with anxiety or pain. The ALJ reiterated that "the claimant's alleged symptoms and limitations are not fully consistent with the objective and other evidence of record." (R. 28). It is not for this Court to say that the ALJ should have given more weight to Rosario's treatment history with Dr. Roach and less weight to the evidence that Rosario reported being able to go to appointments, do laundry, cook, walk a mile, ride a bike, and take care of toddlers as a nanny and part-time teacher. *Reynolds*, 25 F.4th at 473 (the Court "will not reweigh the evidence . . . or substitute [its] judgment for the ALJ's determination."). Accordingly, because the Court finds no error in the ALJ's consideration of Rosario's ADLs, the ALJ's subjective symptom analysis was not patently wrong.

### C.  Evaluation of Medical Opinion Evidence

Turning to her last challenge, Rosario argues that the ALJ improperly evaluated the opinions of surgeon Dr. Roach and consultative examiners Drs. Lachin and Kelly.  The ALJ's evaluation of the medical opinion evidence in Rosario's case was subject to new regulations pertaining to claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c (2017).  Under the regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a).  An ALJ need only articulate "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b).

The regulations direct the ALJ to consider the persuasiveness of medical opinions using several listed factors, including supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a), (c).  Supportability and consistency are the two most important factors. 20 C.F.R. § 404.1520c(a).  In assessing supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . .  will be." 20 C.F.R. § 404.1520c(c)(1).  Regarding consistency, "[t]he more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

### 1.  Dr. Roach's Opinion

Rosario claims that the ALJ erred by rejecting the opinion of Dr. Roach, the surgeon who had treated her for abdominal issues for over a year and performed multiple surgeries. Doc. [13]

at 14. On December 26, 2017, Dr. Roach completed an opinion questionnaire titled "Gastrointestinal Report." (R. 1787-89). Dr. Roach opined that Rosario's prognosis was good, but she needed another surgery from a hernia sub-specialist. *Id*. at 1787. Among other things, Dr. Roach also opined that Rosario's pain would frequently interfere with her attention and concentration, walking and lifting were difficult for her, she could walk one block and could stand for only 15 minutes at a time, she could stand and walk for less than two hours during an eight-hour work day, she could sit for only three hours total during an eight-hour work day, and she could frequently lift and carry ten pounds and occasionally lift and carry twenty pounds. *Id*. at 1788-89. Contrary to Rosario's claim, the ALJ provided two reasons why he found Dr. Roach's opinion questionnaire "not fully persuasive." *Id*. at 26. Because the Court concludes that the first reason was sufficient, the ALJ's opinion was supported by more than a mere scintilla of evidence.

First, the ALJ explained that Rosario had further treatment for her hernia, and Dr. Roach's opinion was not fully persuasive during the adjudicatory period due to its inconsistencies. (R. 26). Indeed, the lack of support for an opinion and the lack of consistency between an opinion and the record are sufficient reasons for discounting even a treating physician's opinions. *See, e.g., Loveless*, 810 F.3d at 507 (concluding the ALJ properly discounted the treating source's opinion based entirely on the claimant's subjective complaints, where treatment notes reflected negative findings, and the opinion was inconsistent with objective medical evidence); *Richison v. Astrue*, 462 F. App'x 622, 625 (7th Cir. 2012) ("The ALJ did not err here in determining that [the treating physician's] opinion conflicted with other medical evidence, including his own treatment notes.").

Here, the ALJ relied on specific evidence that demonstrated Rosario was "able to bike, walk a mile, work as a nanny taking care of two and four year olds, and do light cardio." (R. 26) (citations omitted). In putting forth these examples of Rosario's activities, the ALJ identified

inconsistencies between Dr. Roach's opinion and contradictory evidence in the record. In response, Rosario does not engage with the ALJ's specific examples or raise any challenge to the ALJ's reasoning on supportability. Instead, she again argues that her ability to "sustain basic activities does not equate to an ability to sustain full-time work." Doc. [13] at 15. As the Court previously explained, there is no evidence that the ALJ overstated Rosario's ability to perform ADLs, and there was no error in the ALJ's consideration of Rosario's ADLs. *See infra* at 13-15.

Moreover, the ALJ emphasized that Dr. Roach's findings were inconsistent with the level of activity that Rosario reported. (R. 26). For example, Dr. Roach opined that Rosario's pain would frequently interfere with her attention and concentration. *Id*. at 1788. Yet the ALJ pointed out that Rosario worked as a nanny taking care of a two- and four-year-old. *Id*. at 26 (citing R. 1470). Rosario's work taking care of children during the adjudicatory period required her attention and concentration. In addition, Dr. Roach stated that he believed walking was difficult for Rosario, and she could only walk one city block. *Id*. at 1788. However, the ALJ noted that Rosario could walk a mile. *Id*. at 26. The ALJ based his conclusion on Rosario's husband's function report, which stated that Rosario could walk a mile or longer before needing to stop and rest. *Id*. at 205. The ALJ also summarized record evidence of Rosario's ability to exercise, including riding her bike regularly, walking, and doing low-impact cardio and weight exercises twice a week. *Id*. at 23-25 (citing R. 776, 780, 1015, 1517, 1534, 1829, 1888, 1934). It appears that Dr. Roach's conclusions would have precluded Rosario from many of the activities evidenced in the record that she was able to complete. As such, the Court affirms the ALJ's discounting of Dr. Roach's opinion because he provided several examples of why Dr. Roach's opinion was inconsistent with other evidence, and thus, explained why the opinion was "not fully persuasive."

*Christina S. v. Kijakazi*, 2022 WL 17076654, at \*4 (N.D. Ind. Nov. 17, 2022) ("the ALJ determines how persuasive the medical opinions are") (citing 20 C.F.R. § 404.1520c(b)(2)).

Second, the ALJ noted that Dr. Roach's opinion was outside the adjudicatory period. (R. 26). In the present case, Dr. Roach's opinion was issued on December 26, 2017, approximately four months before her alleged onset date of April 16, 2018. Although pre-onset medical opinions are not necessarily probative of disability, the ALJ must consider them, along with all the other evidence in the record. *See Roddy*, 705 F.3d at 636 ("An ALJ must consider all medical opinions in the record."); *Maria P. v. Kijakazi*, 2022 WL 1523639, at \*4 (N.D. Ill. May 13, 2022) ("Whether medical records or opinions predate the claimant's alleged onset date is something the ALJ can consider, but that fact alone does not automatically render them outdated.") (internal quotation marks and citation omitted). Nonetheless, even if it was in error for the ALJ to discount Dr. Roach's opinion on account of it being outside the adjudicatory period, the error was harmless because the ALJ did not discount Dr. Roach's opinion solely because it was issued before Rosario's alleged onset date. *See Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2020) (emphasizing the harmless error standard applies to the judicial review of administrative decisions). Rather, the ALJ provided an additional rationale for discounting Dr. Roach's opinion, including several examples of why the record evidence did not support the opinion. As a result, the ALJ supported his position with more than a mere scintilla of evidence. Thus, Rosario has not shown that the ALJ committed a reversible error.

### 2.    Dr. Lachin's and Dr. Kelly's Opinions

Finally, Rosario contends, in one paragraph, that neither consultative examiner "offered anything that can be construed to be an opinion, other than stating Plaintiff could manage her own funds." Doc. [13] at 15. According to Rosario, "the ALJ leapt from statements that Plaintiff could

18

manage her own funds to a finding of no disability." *Id*. However, "[a]n ALJ is required to consider a consultative examiner's opinion and explain the weight given to such an opinion in his decision." *Todd B. v. Kijakazi*, 2022 WL 2132542, at *5 (N.D. Ill. Jun. 14, 2022) (internal quotation marks and citations omitted). The Court does "not review medical opinions independently but rather review[s] the ALJ's weighing of those opinions for substantial evidence" and only "overturn[s] that weighing if no reasonable mind could accept the ALJ's conclusion." *Grotts*, 27 F.4th at 1278.

In June 2019, Dr. Lachin completed a consultative internal medicine examination, which included a review of Rosario's medical history, an interview with her, and a physical and mental status examination. (R. 1273-76). The ALJ found Dr. Lachin persuasive because his opinion was consistent with medical records and supported by Rosario's testimony concerning her depression, panic attacks, history of hernia repair, and degenerative disc disease with scoliosis. *Id*. at 26. In finding Dr. Lachin persuasive, the ALJ relied on Rosario's testimony, medical and psychotherapy progress notes from April 2017 to October 2020, a consultative examination report from July 2019, and outpatient hospital records from May 2017 to April 2020. *Id*. (citations omitted).

Dr. Kelly also completed a consultative psychological examination in June 2019, which comprised a review of Rosario's medical history, including psychiatry and primary care provider notes and a mental status examination. *Id*. at 1268-71. Dr. Kelly diagnosed Rosario with major depression and panic disorder with agoraphobia. *Id*. at 1271. Dr. Kelly opined that Rosario was alert and oriented to person, place, and time; cooperative throughout the interview and made good eye contact; seemed to be a good historian; had a fine gait and movements; and did not meet the criteria for PTSD. *Id*. The ALJ found Dr. Kelly's opinion persuasive because it was consistent with medical records and supported by Rosario's claims of depression and panic attacks. *Id*. at 27.

In reaching that conclusion, the ALJ relied on Rosario's testimony and medical records and psychotherapy progress notes from April 2017 to April 2019. *Id*. (citations omitted).

The ALJ reasonably evaluated both medical opinions. The ALJ accurately described the consultative examiners' reports and assessed them in the context of Rosario's complete medical record. (R. 26-27). Notably, Rosario does not claim that any errors existed in the consultative examiners' reports or that the ALJ erred in his analysis of their reports. Instead, Rosario appears to misconstrue the examiners' opinions by claiming that neither examiner "offered anything that can be construed to be an opinion, other than stating Plaintiff could manage her own funds." Doc. [13] at 15. However, a careful review of both reports indicates that Dr. Kelly and Dr. Lachin provided separate four-page analyses of Rosario's medical records, in-person examination, and diagnosis. (R. 1268-71, 1273-76). For example, Dr. Kelly opined that Rosario had a fine gait and movements and did not meet the criteria for PTSD. *Id*. at 1270-71. Similarly, Dr. Lachin opined that Rosario was cooperative and not depressed, agitated, irritable, or anxious with normal affect and gait. *Id*. at 1275-76.

The ALJ also explained why he found the consultative examiners' opinions persuasive. The ALJ stated that Dr. Lachin's report was persuasive because his opinion was consistent with medical records and supported by Rosario's testimony. (R. 26). The ALJ also explained that Dr. Kelly's report was persuasive because it was consistent with medical records and supported by Rosario's claims. *Id*. at 27. As a result, the ALJ's explanation emphasized the factors of supportability and consistency, and thus, was supported by more than a mere scintilla of evidence. 20 C.F.R. § 404.1520c(b)(2) ("The factors of supportability ... and consistency ... are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be."). Ultimately, it was Rosario's

burden to prove her disability, and she has not met that burden here. *See Gedatus v. Saul*, 994 F.3d 893, 905 (7th Cir. 2021) ("[The claimant] bears the burden to prove she is disabled by producing medical evidence."); *Olsen v. Colvin*, 551 F. App'x 868, 875 (7th Cir. 2014) ("But [the claimant] has not made a serious effort to show that the ALJ's conclusion is incorrect. It was [the claimant's] burden to present medical evidence supporting her claim of disability."). Because the examiners provided fulsome consistent reports that the ALJ then relied on, the Court finds that the ALJ did not "leap[] from statements that Plaintiff could manage her own funds to a finding of no disability."

In addition, Rosario claims that the ALJ "omitted any mention of a litany of dire observations regarding Plaintiff's mental status that were included in the consultative psychological report." Doc. [13] at 15. However, an ALJ is not required to discuss every piece of evidence in the record. *See Knox v. Astrue*, 327 F. App'x 652, 657–58 (7th Cir. 2009) ("The ALJ need not provide a written evaluation of every piece of evidence, but need only 'minimally articulate' his reasoning so as to connect the evidence to his conclusions.") (citing *Rice*, 384 F.3d at 371). Other than Rosario's general assertion that the ALJ "omitted any mention of a litany of dire observations," Rosario neglects to identify any specific examples for the Court to address. Although the ALJ was not required to mention every piece of evidence in Dr. Kelly's psychological report, the ALJ did discuss Dr. Kelly's mental diagnoses, including major depression and panic disorder with agoraphobia. (R. 27) (citing R. 1271). The ALJ also pointed out that Dr. Kelly found that Rosario "did not meet criteria for PTSD, but did have panic attacks, and a depressed mood with congruent affect." *Id*. When the ALJ's decision is read as a whole, it is clear that the ALJ considered Dr. Kelly's analysis of Rosario's mental status. *See Winsted*, 923 F.3d at 478. Therefore, the Court finds nothing improper in the ALJ's assessment of the consultative examiners' opinions.

In sum, Rosario has failed to raise a reversible error in the ALJ's decision.  Although she disagrees with the ALJ's crafting of her mental RFC, analysis of her subjective statements, and review of the medical opinion evidence, the record shows that the ALJ considered and weighed the evidence Rosario now touts.  As often is the case in social security cases, the record here contained "conflicting evidence [that] could have supported reasonable decisions to grant benefits or to deny them." *Chambers v. Saul*, 861 F. App'x 95, 97 (7th Cir. 2021).  Under the deferential substantial evidence standard of review that controls this Court's review, an ALJ's decision cannot be overturned simply because the Court might have weighed the evidence differently.  The low threshold for substantial evidence was met, as a "reasonable mind might accept" the ALJ's cited evidence in this case as "adequate to support" her conclusions. *Biestek*, 139 S. Ct. at 1154.

### III.  **CONCLUSION**

For the foregoing reasons, the Court denies Plaintiff's request for reversal and remand [13], grants the Acting Commissioner's Motion for Summary Judgment [23], and affirms the ALJ's decision.

**SO ORDERED.**

Dated:  December 1, 2022

Sunil R. Harjani
United States Magistrate Judge